United States v. Pinto. Good morning, your honors. Government counsel, may it please the court. My name is Paul Camarena and I am counsel for the appellant, Mr. Peter Pinto, appointed by this honorable court. Mr. Pinto operated a collection agency whereby clients would contract his agency to collect their account receivables and remit those account receivables back to the clients. Eventually, the government would charge Mr. Pinto with fraud, with fraud against the clients who had entrusted. Pleaded guilty to it. Yes, pleaded guilty to. There's no ambiguity about the fact that he's engaged in criminal conduct. Your appeal is the amount of restitution, right? That's right, your honor. And I mention that because there are several different items of restitution. There is the restitution with respect to the clients who entrusted him with their accounts receivables, restitution with respect to his investors, and restitution with respect to a lender. The appeal pertains to the client victims, right? Exactly. And only the client victims. And I just wanted to unconvolute some issues that may have gotten convoluted. We're focused on the client victims and the restitution associated with the client victims. Yes, your honor. There was a co-conspirator in this case. What is the error that you want us to review here? What is the precise error that the district court, you claim, committed? The district court's granting of the government's request for restitution after Mr. Pinto had protested that he had not received the underlying records. And what are the underlying records that you requested that the district court did not require the government to produce? In error. The co-conspirator's records were his QuickBooks records that the government had. And I mention that because the government stated during the hearing that the only records, and they used that word, the only records that they have that would support Mr. Silver's, the co-conspirator's statements are his- There was a point for me in the record where you specifically requested the QuickBooks records. Yes, your honor. To begin with, I would direct the court- I would think that if you wanted us to assign error to a failure to order the government to produce the QuickBooks records, you'd have an immediate cite. I do, your honor. What is that? I would direct the court to the opolis brief, page 9. No, in the record. It is the appendix. Page 15, the last line where Mr. Pinto- I'm sorry, what page? I'm looking at GA 15, you're citing your appendix. Your appendix. In the back of your brief, right? Yes, your honor. Okay, please, go ahead. Page 15. Line? The last line, line 25. Mr. Pinto's counsel starts a sentence by stating, the records that we have, the only records- I'm sorry, that's the government's counsel. They say the records that exist are the QuickBooks records. Later on, in the following page, or on page 17, Mr. Pinto, through his counsel on line 9, protests, they didn't give us the QuickBooks records. He goes on to say, they turned over the spreadsheet that was wrong, and they went back to Mr. Silver. Where do you ask for the QuickBooks records? Your honor, that line where Mr. Pinto's counsel requests, protests that he had not received the QuickBooks records should be taken in conjunction with an earlier filing where they had protested earlier that the government had not turned over the QuickBooks records. Where is that? That is- I'll ask the court to look at the Opolis brief, page 9. The government brief. Yes. Yes, and what are you asking us to look at there? I'll ask you to look at footnote 1, where it states, Pinto alleged that he- That allegation was in a court filing, your honor. Well, where is it? You have the obligation to create an appendix that supports your argument, and you now know the government is challenging it being in the records. I'm using their appendix to support my claim, your honor. They are disclaiming the existence of a request. Well, they're disclaiming the existence of an earlier request. They are conceding that he made a request in a letter that he submitted to the court. I don't read it that way. Am I missing something? The footnote states- You allege that you requested it. Yes. But the government has- so that's at GA 135. Yes, your honor. They're citing you to. And what do you say at 135? That's a letter that Mr. Pinto's counsel submitted to the court. And what in the letter do you want us to focus on? I'm looking at GA 135, right?  Okay, where? There's a section where it's a September 15, 2015 letter where Mr. Pinto's lawyer- I'm on the page. Where in the letter do you want us to look? Because it's single space, lots of paragraphs. Your honor, I don't have that in front of me, but I- Maybe what you're alluding to is a statement on the first full paragraph of 135 that says, the last- the second to last- maybe the last sentence- second to last sentence, this is particularly so where the underlying records in the form of bank account records, canceled checks, and QuickBook records have not been provided to Mr. Pinto, notwithstanding his request for these records. Yes, your honor. That's exactly what I was referring to. Well, that suggests you requested them from the government. Yes, your honor. Did you ever say to the court, order the government to give us these records? Not in those exact words, your honor, but that would have been a reasonable interpretation when this issue was before the district court. A court doesn't deal with disputes between the parties until someone says to the court, they have to give them to us, order them to give them to us, because they're not doing it voluntarily, but that you never did. But go ahead, because I'm not sure how this is an error in any event, because the court has tremendous discretion as to how it conducts these hearings, and it seemed to think it was sufficient that it had the evidence from the accomplice, it had his spreadsheet, and it had the evidence from at least one of the victims. This had to be a preponderance finding. We allow these things to be done on a reasonable approximation of losses. Why wasn't that possible here? Because the accomplice had been proven incorrect earlier. The accomplice had asserted that this conspiracy had defrauded one particular— This is the direct TV thing. Yes, your honor. Now, you showed that that was a problem. Did you say to the court that you needed anything more to show that others were a problem? Because I didn't see that. Well, not anything more than I already pointed out, in that his counsel pointed out that they had requested the QuickBook records and didn't receive them, and again, during the restitution hearing, they pointed out, they protested that we don't— Why wasn't this a sufficiency challenge, which you're not pursuing on appeal? Because— That the evidence the government had wasn't sufficient, but you don't argue that on appeal. Because I don't think that it was insufficient. The court, even when the evidence is sufficient, the court has to give the defendant an opportunity to present his case, and the only way that he could have presented his case was by reviewing the only records that would have supported the accomplice's statement, and those were the QuickBook records. The court, without an opportunity to present Mr. Pinto's case, the court absolutely could have accepted this, but that doesn't end the analysis because Mr. Pinto, despite the court's wide leverage, should have the opportunity and constitutionally has the right to present his case. Let's hear from the government, and then I know you want to rebut. Good morning, Your Honors. My name is John Pierpont. I'm an assistant U.S. attorney for the District of Connecticut. I'll be arguing on behalf of the United States, the appellee here today. All right. You know the obvious question. Why didn't you just give him the records? So the answer to that obvious question, Your Honors, is we had what was effectively a multiple-year dialogue with defense counsel about restitution. The first motion for restitution— Just cut to the chase. Of course, there's all this background, but you've got the QuickBook records themselves, and instead of providing them with the QuickBook records, you provided his client with a summary of those records. So having access to the original materials, why didn't you provide those? I think probably, Your Honor, the short answer is it was not clear to us that that was what the concern was with respect to the spreadsheet. It is certainly true that during the discussions that happened below, the veracity of that spreadsheet was called into question, but the position that was repeatedly taken by the defense was that they wanted additional victim impact statements when it came to supporting that, not that they ultimately wanted the underlying records. Were you counsel below for the government? I was not counsel below, Your Honor. Do you know whether or not the government was asked for the QuickBook records by the defense? I have had those conversations, Your Honor, with people who were counsel below. My understanding is that explicit question for underlying records with respect, specifically, I want to make sure I . . . Not with respect to this context. Were you asked for the QuickBook records? With respect to the client victims, the answer is no. In any respect? Yes, Your Honor. So then the answer is yes, Your Honor. Because it's in the letter that counsel just pointed to. And if I could direct, Your Honor, and I know that is government's appendix . . . Is there a reason not to give them to the defense and just say knock yourself out? So I don't believe that there is a reason to do that, Your Honor. I do want to point out that where that was pointed at was with respect to the investor victims, to which there's not a challenge here on appeal. You mean you're referring back to 135 again? That's correct, Your Honor. If you look at 135 . . . And, in fact, if you look at 134, which is the page before that, it shows that this section applies to the investor victims. So, with respect to the client victims, yes, the spreadsheet was challenged. But what was talked about below was instead requesting victim impact statements. That's what Judge Inderhill had before him. 136 refers to the client losses. That is correct, Your Honor. In 136 to 137, you see the multiple paragraphs that are addressed to asking for victim impact statements. You happen to be somewhat lucky because your adversary has more or less waived any objections relating to any victims who are not the client victims. But you had a request for QuickBook records. So, just broadly speaking, understanding that your office's view was that it was limited to a different set of victims, why not? Why not? This spreadsheet, and to be clear, I think there may be a little bit of confusion. This spreadsheet was not a piece of work product that the government and Mr. Silver sat down and looked at records and created this. This spreadsheet was a document that was found on Mr. Silver's computer. And the way that we understand it to have happened is that Mr. Silver or one of his associates went in and pressed a couple of buttons and created this Excel spreadsheet. This Excel spreadsheet was created in 2011, before the beginning of the conspiracy and before Mr. Silver had anything to do with the government at that point. So, there was no reason, I guess from the government's perspective, it was a file that was found on Mr. Silver's computer that tended to support the restitution. And in conversations with Mr. Silver, it understood that it did. So, I think the short answer to your question, Your Honor, is the government didn't see there to be a need to turn over the underlying documentation. All right, so you didn't. So, now tell us why you don't have a problem defending the judgment. So, the issue that was presented to Judge Underhill was the addition of the victim impact statements. That is what they sought. Now, the nature of the underlying fraud was such that it was a client that Mr. Pinto ran Oxford. Oxford was a debt collection agency. Right, the clients didn't know how much they'd lost because they didn't know how much had been collected. That's exactly right, Your Honor, and that is exactly what Judge Underhill found. That was the issue that was before him. He made that finding, and he thought that it was sufficient based on the evidence before him. And I would direct Your Honors, of course, to the standard of review with respect to the MVRA. It need only be a reasonable approximation, and that happened here. All right. If there are no further questions, I'm happy to rest on the brief. Thank you, Your Honors. Thank you. Mr. Camerani, you reserve time for questions. Your Honor, the government asserts that the QuickBook records were created in 2011 before this accomplice had any motive to curry favor with the government. However, if that's the case, and the record, I'm not saying that that isn't the case. I'm just saying that the record doesn't support that because the records were not turned over to the defense and put forth before the court. The government created the spreadsheet based on the QuickBook records. Yes. So is the suggestion that the government somehow did not reasonably use the QuickBook records? No, Your Honor. The suggestion— What was it in the spreadsheet that was inadequate? It was at least one item for almost a quarter of a million dollars that was inaccurate. And this was— And you knew that because? Because Mr. Pinto recognized that his company never had the opportunity to convert the funds of this one client. All right. So that wasn't a QuickBook matter. No. So with respect to—basically this is like a summary, the government's chart, that it made from the QuickBook records. What was it that you—I'm trying to figure out what it is you don't trust about the chart or the summary. We don't trust that it's coming from this co-conspirator who had lied before and had reason to— But it came from the QuickBook records. From his QuickBook records, yes. Right. So now you're saying, well, we want the QuickBook records. Well, if the chart said that from these particular transactions it was $100, you don't think the government could add up the transactions on the QuickBook records? Yes, but we don't know whether the government audited the QuickBook records the way— What would you have done with the QuickBook records? We would have audited them to see that they were actually created before this accomplice had reason to carry favor with the government. And I also point out when the government produced victim impact statements with respect to one client, Mr. Pinto withdrew his objection with respect to one client. This is not an unreasonable request. He's not looking for a reason. The government said that the spreadsheet was found in, I think, 2011 or created in 2011 and was found on the co-defendant's computer. Is that right? It's not on the record, Your Honor. I don't know when it was found, but I know that the conspirator cooperated with the government. The government was suggesting that it didn't create the summary. It didn't make the QuickBook records, and that's the problem, because we don't have any reason to question the government, but this co-conspirator— If you wanted the QuickBook records to, in essence, try to impeach the spreadsheet, that's what you were looking for, ways to undermine the spreadsheet? Yes, Your Honor. It could have been that the QuickBook records would have supported this. Did the government suggest that in front of Judge Underhill, Mr. Pinto's principal point was there should be more victim impact statements, and with respect to these victims, he was not pressing this point? Do you agree with that? No, Your Honor. Your Honor, what Mr. Pinto was—my point is that—my position is that Mr. Pinto was looking for something other than this co-conspirator accomplice who had been proven wrong before. You answered a question I think that was slightly inconsistent with your answer to an earlier question. You are not, as I understood your earlier answer, your client was not interested in the QuickBook records to just see if it matches up with the summary. You wanted to audit the underlying QuickBook record. Is that correct? Yes, Your Honor, and that's only because there's a very common, very simple— You wanted to attack the underlying QuickBook record. Yes, Your Honor, and that's what we're looking for, and that's what the government had and never turned over. Thank you. Thank you, Your Honors. We'll take this case under advisement. We'll hear now—